# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

RECEIVED
2019 JUN -4 A 10: 28

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

ADAM WADE ROBINSON,    )
an individual,    )
   )
     Plaintiff,    )
   )
   )    **Case No.:**
v.    )    2:19-cv-385
   )
MCLANE FOODSERVICE, INC., )
a corporation; DARIUS ANTWON )
LATTIMORE, an individual;    )
ROBERTO M. CASTILLO, an    )
individual, et al.,    )
   )
     Defendants.    )

## NOTICE OF REMOVAL

COMES NOW Defendant McLane Foodservice Distribution, Inc. (hereinafter "Defendant"), incorrectly named in the Complaint as McLane Foodservice, Inc., by and through their undersigned counsel, and files this Notice of Removal of this action from the Circuit Court of Pike County, Alabama, to the United States District Court for the Middle District of Alabama, and in support hereof, respectfully show unto this Court as follows:

## PROCEDURAL HISTORY

This case involves an automobile accident. Plaintiff Adam Wade Robinson filed this action on May 7, 2019, in the Circuit Court of Pike County, Alabama (Case Number CV-2019-900096) against McLane Foodservice, Inc., Darius Antwon

Lattimore, and Roberto M. Castillo. Days later, the Plaintiff amended the Complaint to substitute the administrator of Castillo's estate as the real party in interest, naming Nickie Bateman as a Defendant. The Plaintiff seeks compensation for damages resulting from the motor vehicle accident during which the Plaintiff suffered injury. At the time of the accident, the Plaintiff was performing his duties as an Alabama State Trooper. In connection with those duties, he was dispatched to the scene of an accident purportedly caused by Roberto Castillo. While dispatched to the scene, the collision between the Plaintiff's vehicle and the McLane vehicle occurred. In the four-count Complaint, the Plaintiff alleges that the Defendant Lattimore negligently and/or wantonly operated the McLane vehicle on the day of the accident, McLane negligently and/or wantonly trained, supervised and monitored Lattimore, McLane negligently/wantonly hired, trained, supervised and retained Lattimore, Castillo was negligent and/or wanton. A complete copy of the Circuit Court's entire file for this matter is attached hereto as Exhibit A.

This Notice is filed within thirty (30) days of service of the Complaint which is within the time allowed by 28 U.S.C. § 1446 (2007) for removal to the United States District Court. As the fraudulently joined defendant does not have to consent to the removal, and Lattimore has not been served, all Defendants who have been properly joined and served have consented to the removal. *See Maxwell v. E-Z-Go, A Division of Textron, Inc.*, 843 F.Supp. 2d 1209, 1213 (M.D. Ala. 2012).

## JURISDICTION

This case is removable to federal court pursuant to 28 U.S.C. § 1441 (2007), based on diversity jurisdiction as provided in 28 U.S.C. § 1332 (2007). The Plaintiff is, upon information and belief, a resident of the State of Alabama. Lattimore is an individual resident of the state of Georgia. McLane is a corporation organized under the laws of Texas, with its principal place of business in Texas. Castillo's representative, Bateman, is a resident of Alabama. This action is nevertheless removable to federal court pursuant to 28 U.S.C. §§ 1332 and 1441, because Plaintiff fraudulently and improperly joined Castillo's estate in an attempt to defeat diversity. Accordingly, Castillo's estate, i.e Bateman, should be dismissed and the naming of these defendants should not affect this Court's jurisdiction.

Additionally, this court has jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of Seventy Five Thousand Dollars and No Cents ($75,000.00), exclusive of interest and costs.

## FRAUDULENT JOINDER

A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant with no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). The joinder of the resident defendant constitutes fraudulent joinder where it wrongfully deprives a defendant of the right of removal. *See Alabama Southern Ry. Co. v. H.C. Thompson*, 200 U.S.

206, 218 (1906). In referring to diversity cases, 28 U.S.C. § 1441(b) directs the Court to align the citizenship of the parties properly joined. If a party is improperly added, the court should disregard that joinder for purposes of removal. *See id.* Thus, an action may be removable if it is shown that a non-diverse defendant was fraudulently joined. *See id.*

Fraudulent joinder exists in three scenarios: (1) where there is no possibility the plaintiff can prove a cause of action against the non-diverse defendant; (2) where there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) "where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant." *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998).

To determine whether a resident defendant has been fraudulently joined, district courts are to apply a proceeding similar to that used for a ruling on a motion for summary judgment. *Crowe v. Coleman*, 113 Fo.2d 1536, 1538 (11th Cir. 1997) (citations omitted). District courts are to consider the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. *Legg*, 428 F.3d 1317 (11th Cir. 2005). All questions of fact must be resolved in favor of the plaintiff; however, there must be some question of fact before the court can resolve the fact in the plaintiff's favor. *Id.* at 1323. As

with a summary judgment motion, the court cannot, in the absence of any proof, assume the nonmoving party could or would prove the necessary facts. *Id.* For removal purposes, the citizenship of fictitious parties is disregarded. 28 U.S.C. § 1441(a) (2007).

As discussed below, removal is proper due to the fraudulent joinder of Castillo/Bateman because the there is no real connection between the claims against McLane/Lattimore and Castillo/Bateman. The Plaintiff's Complaint even stated that "this cause of action arises out of two separate motor vehicle wrecks." There is no existence of a duty owing between Castillo and Robinson. Moreover, there is no causal relationship between the Castillo accident and the Plaintiff's injuries. Accordingly, the Plaintiff cannot recover from Castillo, who is improperly joined in this action as the Plaintiff's method of defeating diversity jurisdiction.

## FACTS AND ALLEGATIONS

On June 19, 2017, the Plaintiff was working as an Alabama State Trooper. While working, the Plaintiff was dispatched to the scene of an accident involving Castillo. At the time of the accident, Castillo's blood alcohol content exceeded legal limits. While the Plaintiff was in route to the scene of the accident, the vehicle he was driving collided with the McLane vehicle being driven by Lattimore.

On May 9, 2019, the Plaintiffs initiated this action against McLane, Lattimore and Castillo. The Plaintiff claims he was caused to suffer serious physical injury

which was accompanied by pain and suffering, mental anguish, medical expense and permanent injury. The Plaintiff alleges that all of the Defendants caused these damages. The Plaintiff alleges Defendants McLane and Lattimore negligently and/or wantonly operated their vehicle on the day of the accident, negligently and/or wantonly trained, supervised and monitored Lattimore, negligently/wantonly hired, trained, supervised and retained Lattimore. In addition, the Plaintiff claims that Castillo was negligent and/or wanton at the time of his accident.

## ANALYSIS

## I.   REMOVAL IS PROPER BECAUSE CASTILLO/BATEMAN, THE NON-DIVERSE DEFENDANT WAS FRAUDULENTLY JOINED TO THE ACTION.

It is readily apparent that any participants from the first accident to which the Plaintiff was responding in connection with his duties as a State Trooper have been fraudulently joined. As previously stated, the Complaint concedes that there were two separate and distinct accidents. There is no allegation or evidence that any vehicle involved in the first accident (or any debris from the first accident) impacted any vehicle involved in the Lattimore/Robinson accident. Nor is there any allegation or evidence that any vehicle involved in the first accident (or any debris from the first accident) encroached into the lanes of travel where the accident involving Lattimore and the Plaintiff occurred. The only allegation purporting to connect the first accident to the accident wherein the Plaintiff was injured is that "while in route

to the scene [of the Castillo wreck]," the tractor-trailer being driven by Lattimore "collide[d] with the vehicle being operated by the Plaintiff."

Not only does the Complaint reflect the occurrence of two separate and distinct accidents, the Uniform Traffic Crash Report from the Lattimore/Robinson accident does not list any driver/vehicle from the first accident as being involved. (See Exhibit "B" hereto). To the contrary, the first accident resulted in a wholly separate Uniform Traffic Crash Report and was given a wholly distinct case number. (See Exhibit "C" hereto). Perhaps most significantly, a comparison of the two accident reports reveals a time separation in excess of an hour and a distance in locations of approximately 16 miles. (Compare Exhibits "B" and "C".)

### i. No legal duty would have been owed/breached as to Robinson by any participant in the Castillo accident.

This Court has recognized that claims for negligence and wantonness arising under Alabama law must be predicated upon the existence of a legal duty running from the defendant to the plaintiff. *See, e.g., Edinonson v. Cooper Cameron Corp.*, 374 F.Supp. 2d 1103, 1106 (M.D. Ala. 2005). It is equally axiomatic that;"[i]n Alabama, the existence of a duty is a strictly legal question to be determined by the court." *Dibiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008) (citations omitted). In determining whether a duty exists, the courts consider factors including public policy, social considerations, foreseeability, the nature of the defendant's activity, the relationship between the parties; and the type of possible

injury or harm. *Patrick v. Union State Bank*, 681 So. 2d at 1368 (citations omitted). "The key factor is whether the injury was foreseeable by the defendant." *Id.* at 1368 (quoting *Smitherman v. McCafferty*, 622 So. 2d 322, 324 (Ala. 1993)). With respect to foreseeability as relating to the duty analysis, the Alabama Supreme Court has noted that "foreseeability must be based on the probability that harm will occur, rather than the bare possibility." *See Butler v. Warehousing and Moving Co., Inc.*, 686 So. 2d 291, 293 (Ala. 1996); *see also Exparte Wild West Social Club, Inc.*, 806 So. 2d at 1241.

Even construing the allegations of the Complaint most favorably to his position, Plaintiff has not stated any legal duty that would have been owed/breached as to Robinson by Castillo. It is apparent from the face of the Complaint that any alleged misconduct by participants in the first accident would have occurred prior to Robinson even learning of that accident and in the northbound lanes of US-231 over 16 miles away from Robinson. There is no suggestion from the Complaint that any vehicle or debris from the first accident directly impacted any drivers in the Lattimore/Robinson accident some 16 miles away, in the southbound lanes of US-231 and approximately 1 hour later. From the best that can be surmised, Plaintiff is merely alleging that the first accident served as the reason that the Plaintiff was traveling on the public roadway at the time of the accident.

To accept such a "reason for travel" theory of negligence would impose virtually boundless legal duties upon unsuspecting persons in almost every imaginable context. With specific respect to automobile accidents, where persons can be traveling for even the most mundane of occurrences, the prospect of such personal injury or wrongful death liability is especially frightening. For example, Plaintiffs logic would impose potential liability upon a pregnant woman giving birth if the father was involved in an accident when speeding to the hospital for the birth of the child. No prior decision from any Alabama appellate court has extended the concept of duty even remotely close to such an unmanageable and unpredictable degree. Nor should this Court set such precedent.

Because Plaintiff cannot demonstrate any legal duty that was owed or breach as to Robinson in relation to the Castillo, there is no possibility that Plaintiff can establish a claim against the participants from the first accident so as to destroy diversity jurisdiction. *See, e.g., Davis v. Wal-Mart Stores, Inc.*, 64 F.Supp. 2d 1176 (M.D. Ala. 1999) ("[B]ecause the court finds that the third-party driver's actions were unforeseeable to Defendant at the time it acted, the court finds that Defendant had no duty and thus was neither negligent nor wanton.")

**ii. Alabama law will not support a finding of proximate causation between the first accident and the fatal accident.**

Even assuming the existence of some arguable duty, the fundamental question then would become whether Plaintiff could reasonably (and not merely

theoretically) establish proximate causation despite the undisputed geographic and temporal distance between the Castillo accident and the Robinson/Lattimore accident. Under settled principles of proximate causation, that inquiry must be answered in the negative. *See, e.g., Marlin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (enumerating proximate cause as an essential element of claims for both negligence and wantonness).

The longstanding view of proximate cause in Alabama can be found in, among many other cases, *City of Mobile v. Harvard:*

> For an act to constitute actionable negligence, there must be not only some causal connection between the negligent act complained of and the injury suffered, but also the connection must be by a natural and unbroken sequence, without intervening, efficient causes, so that, but for the negligence of the defendant, the injury would not have occurred. The negligence must not only be a cause, it must be the proximate cause of the injury. *Western Railway of Alabama v Mutch*, 97 Ala. 194, 11 So. 894, 21 L.R.A. 316; *Mobile City Lines, Inc. v. Proctor*, 272 Ala. 217, 130 So. 2d 388.

> Where it is determined that some prior negligent act merely created the condition or gave rise to the occasion and after the creation of said condition an intervening, independent agency produces an injury, the party guilty of the first negligent act is not liable because his negligence was but a remote cause of the injury. *Louisville &N.R Co. v. Maddox*, 236 Ala. 594,13 So. 849,118 A.L.R. 1318; *Watt v. Combs*, 244 Ala. 31, 12 So. 2d 189, 145 A.L.R. 667. And, as said by this court in *Garrett v. Louisville &N.R Co.*, 196 Ala. 52,71 So. 685, 686:

> 'The law, in its practical administration in cases of this kind, regards only proximate or immediate, and not remote, causes, and, in ascertaining which is proximate and which remote, refuses to indulge in metaphysical niceties. Where, in the sequence of events between the original default and the final mischief, an entirely independent and

> unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief; the second cause is ordinarily regarded as the proximate cause and the other as the remote cause.' *Atchison, etc., Ry. Co. V. Calhoun*, 213 U.S. 1, 29 Sup.Ct. 321, 53 L.Ed. 671; *Milwaukee, etc., R. Co. v. Kellogg*, 94 U.S. 469, 24L.Ed. 256.'

> However negligent a party may have been in some particular, he is accountable only to those who are injured as a proximate result of such negligence. Where some independent agency intervenes and is the immediate cause of the injury, the party guilty of the prior negligence is not liable. The proximate cause of an injury is the primary moving cause without which it would not have occurred, but which, in the natural and probable sequence of events, produces the injury. *Smith v. Alabama Water Service Company, supra, Williams v Wicker*, 235 Ala 348, 179 So. 250; *Mobile City Lines, Inc. v. Proctor, supra.*

268 So. 2d 805 (Ala. 1972) (finding that any negligence in maintaining fire suppression equipment "Was no more than a remote cause" of death when the plaintiff's decedent was involved in an automobile accident and died from burns and respiratory tract injury). *See also Nance v. Southerland,* 79 Sb. 2d 612, 624 (Ala. 2010) (articulating standard and determining lack of proximate cause as a matter of law); *Albert v. Hsu*, 602 So. 2d895, 897-98 (Ala. 1992) (explaining that lack of foreseeability as a matter of law precludes finding of proximate causation).

In *Davis v. Wal-Mart Stores, Inc.,* this Court examined Alabama's standard of proximate causation and determined as a matter of law that liability for damages sustained in a subsequent automobile accident could not be imposed on the basis of an uninvolved defendant's alleged act of negligence earlier in the causal chain. 64 F.Supp. 2d 1176. It was alleged in *Davis* that the defendant store had left a shipment

of flowers in an unloading zone rather than moving them into a designated fenced-in area for display. *Id.* at 1178. The plaintiff was looking at the flowers when he was struck by a vehicle. *Id.* Claims were brought against the defendant store for negligence and wantonness on the theory that its misfeasance in leaving the flowers in the unloading zone "exposed pedestrians such as [the plaintiff] to a greater risk of being struck by a vehicle" and that "pedestrian/automobile collisions were foreseeable ... and were the natural consequence of [the defendant's] negligence and wantonness." *Id.* at 1178-79.

On the defendant's motion for summary judgment, this Court expressly held that the plaintiff could not demonstrate sufficient causation to state a cognizable claim against the defendant store. *Id.* at 1181 ("[B]ecause the court finds that the third-party driver's actions were unforeseeable to Defendant at the time it acted, the court finds that Defendant had no duty and thus was neither negligent nor wanton. Accordingly, Plaintiffs' negligence/wantonness claim against Defendant is due to be dismissed."). In reaching that result, this Court looked to general principles of State law as espoused by Alabama courts that

- however negligent some party may have been in some particular [instance], he is accountable only to those injured as a proximate result of his negligence";

- "a defendant who creates a dangerous 'condition' is not responsible for the plaintiff's injury that results from the intervention of another agency, if at the time of the defendant's original negligence the intervening agency could not reasonably be foreseen";

- and an unforeseen agency ... breaks the chain of causation that might have linked the defendant's negligence to the plaintiff's injury."

*Id.* at 1179 (quoting *Gilmore v. Shell Oil Co.*, 613 So. 2d 1272, 1274-75 (Ala. 1993)). Stated differently, it was properly recognized that under Alabama law an "injury must be a natural and probable consequence of the negligent act or omission" in order to be actionable. Id. (quoting *Gilmore*, 613 So. 2d at 1275).

In addition to the general principles cited from *Gilmore*, the *Davis* opinion relied heavily on the Alabama Supreme Court's decision in *Morgan v. City of Tuscaloosa*, 108 So. 2d 342 (Ala. 1959), for purposes of imposing reasonable bounds upon proximate causation. *Id.* at 1180. The allegation in Morgan was that the plaintiff's decedent had been fatally struck while crossing a street after water from a backed-up drainage sewer splashed onto the windshield of an approaching vehicle and obscured the vision of the driver. 108 So. 2d at 344-45. An attempt thus was made to impose liability upon the City of Tuscaloosa for its alleged negligence in maintaining the sewer. *Id.* In rejecting that argument, however, the Alabama Supreme Court held that the conduct of the driver should be considered as the sole

proximate cause of the decedent's death and that any alleged conduct by the City of Tuscaloosa "should be treated as merely a circumstance of the accident and not as a concurring proximate cause." *Id.* at 345. See also *Id.* at 344 ("It is true that the law will consider only the proximate cause and not a remote cause where there are two or more causes of injury.").

It would be entirely inconsistent with the above principles to surmise here that the participants in the Castillo accident could potentially be held liable for the injuries Robinson sustained in the later accident with Lattimore. To so conclude would overlook the sheer happenstance of subsequent events and would presume that the participants in the first accident reasonably should have anticipated (1) that a State Trooper would be called to the scene of the accident, (2) that Trooper would have to travel 16 miles to the scene of the accident, (3) that another driver might be attempting to turn to make a delivery in and around the area where the Trooper was when he was dispatched, and (4) that such action in turning to make a delivery would result in an accident with the Trooper's vehicle. Such fortuitous events closely mirror those found wanting in *Morgan*:

> Upon a careful consideration we have concluded that the alleged acts of the City of Tuscaloosa in failing to build suitable drains or properly maintain the same, was nothing more than a remote cause of the accident It clearly appears that after the condition had been created, an independent agency produced the injury. We do not consider that it could be known by common experience that the failure to properly construct or maintain a drain, as alleged, would cause water to back up in the street, that a car would rim into the water, that the water would

splash upon the windshield and blind the driver and thereby cause the driver to lose control of the car and strike a pedestrian then walking in the street or in the water alleged to have been impounded. It is our considered opinion that from the facts alleged in the complaint, reasonable men would conclude that the defect in the drain was not the proximate cause of the death of the appellant's son....

108 So. 2d at 345. Indeed, to hold otherwise would stretch the concept of proximate cause beyond its logical and legal limits and would effectively substitute a "butterfly effect" analysis in its place.

As demonstrated in prior decisions, the issue of proximate cause largely turns on foreseeability. In that regard, however, "foreseeability must be based on the probability that harm will occur, rather than the bare possibility'." *Ex parte Wild West Social Club, Inc.*, 806 So. 2d at 1241 (granting summary judgment for the defendant where "[the bare chance that an ejected bar patron might be attacked by a security guard is not sufficient to impose liability on the operator of the bar"). As stated even more succinctly in *Alabama Power Co. v. Moore*, "[f]oreseeability is not based on 'bare possibilit[ies]." 899 So. 2d 975, 980 (Ala. 2004) (reversing denial of judgment as a matter of law due to independent, intervening act that was sufficient to sever the chain of proximate causation).

Accordingly, because it cannot reasonably be demonstrated that the participants in the first accident could have foreseen that a second accident would probably an hour later and 16 miles away, Plaintiff cannot demonstrate a claim

against the participants in the first accident sufficient to overcome a fraudulent joinder challenge.

### iii. Other jurisdictions are in accord that no cause of action is presented under such facts as are now at issue.

Several jurisdictions have examined the question of causation/foreseeability in the context of multi-vehicle accidents and have held as a matter of law that liability for a subsequent accident cannot be extended back to participants in a prior accident. The decision of the Kansas Court of Appeals in *Hale v. Brown* is remarkably on point. 167 P. 3d 362 (Kan. Ct. App. 2008). Hale involved an initial accident in which a driver ran off the roadway and into a line of trees. *Id.* at 363. After the arrival of emergency responders, traffic began to back up. *Id.* Approximately 35 minutes later, a driver "failed to respond quickly enough to the traffic congestion" and "struck the plaintiff's car from behind." *Id.* The driver from the first accident successfully moved for a dismissal on the basis that no recognized legal theory existed upon which relief could be granted against him. *Id.*

In evaluating the lower court's dismissal, the Kansas Court of Appeals noted that tort liability in Kansas requires a showing of proximate causation, which demands that an injury be demonstrated to have occurred "in natural and continuous sequence unbroken by an efficient intervening cause, ... the injury being the natural and probable consequence of the wrongful act." *Id.* (citations omitted). The court further noted that Kansas law limited proximate causation to "probable"

consequences as opposed to "all possible consequences." *Id.* (citations omitted). The court therefore held that the claims against the driver involved in the first accident failed to state a cognizable claim and were properly dismissed:

> We do not believe that the average Kansan whose negligence caused her own car to run completely off the roadway would expect to be liable to someone injured 35 minutes later when a third driver was distracted by the commotion. Nor should she. The judgment of the district court granting defendants' motion to dismiss is therefore affirmed.

*Id.* at 367.

A similar decision was reached by the Supreme Court of Montana in *O'Connor v. Nigg*, wherein that court likewise concluded as a matter of law that a driver from an earlier accident could not be liable for a subsequently occurring accident. 838 P.2d 422 (Mont. 1992). In *Nigg*, eyewitnesses and emergency responders stopped to render assistance after a driver lost control of his vehicle and came to rest in the median of an interstate highway. *Id.* at 423. Approximately 5 minutes later, the plaintiff approached from the opposite direction of travel. *Id.* While slowing for the scene, the plaintiff's vehicle was struck from the rear. *Id.* 34.

In rejecting any liability on the part of the driver involved in the initial accident, the court examined whether the second accident could be said to have occurred "in a natural continuous sequence of events, which might reasonably be expected to follow" or whether "the latter's act of negligence in causing the accident was of such a character as not reasonably to be expected to happen in the natural

sequence of events." *Id.* at 424 (quoting *Halsey v. Uithof*, 532 P.2d 686 (Mont. 1975)). In resolving that question, the court concluded that the first driver simply was not obligated to foresee or anticipate that traffic would come to a near stop in the opposite lane of travel and/or that another driver would fail to observe such traffic conditions. *Id.* at 425. Thus, the court held that "the acts of the plaintiff and the person who collided with him were independent, intervening causes of the plaintiff's injury as a matter of law." *Id.*

Both *Hale* and *O'Connor* relied in part upon *Williams v. Smith* as decided by the North Carolina Court of Appeals. 314 S.E. 2d 279 (N.C. Ct. App. 1984). The plaintiff in *Williams* was struck by a vehicle while directing traffic around a prior accident. *Id.* at 280. However, the evidence established that the second accident occurred "some twenty to forty-five minutes [after the first accident]." *Id.* Noting that "[p]roximate cause is that cause, unbroken by any new or independent cause, which produces the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudent could have foreseen that a result was probable under all of the facts then existing," the court held that the first accident was simply "too remote to constitute the basis of a cause of action against [the first driver]." *Id.*

In addressing analogous circumstances, at least three federal circuits similarly have held as a matter of law that prior accidents were too remote to be deemed the

proximate cause of subsequent accidents/injuries. *See, e.g., Baumann v. Zhukov*, 802 F.3d 950, 956 (8th Cir. 2015) (affirming judgment as a matter of law where second accident occurred "at least thirty-six minutes after the initial accident" and where numerous other vehicles had responded without incident to the alleged hazard created by the first accident); *Blood v. VH-1 Music Fest*, 668 F3d 543, 548 (7th Cir. 2012) (affirming judgment as a matter of law where there was a four-hour separation between the two accidents and where other drivers had been able to avoid causing an accident within that period); *Clark. EPCOInc.*, 376 Fed. Appx. 427,431 (5th Cir. 2010) ("Here, Harmon's negligent act took place hours before the accident which killed the decedent, and contributed no more than the traffic jam which caused the decedent 'to be at a particular place at a particular time,' where the decedent lost his life 'as the result of the negligent act of another.") (citation omitted).

Consistent with the treatment afforded by the myriad jurisdictions to have addressed the issue, which in turn have applied virtually identical principles of proximate causation as those that exist in Alabama, this Court should deem the first accident-too remote as a matter of law to support any reasonably possible claim arising out of an entirely separate accident that occurred over an hour later over 16 miles away. As astutely observed by another court on similar allegations:

> To allow this case to continue beyond summary judgment opens the door to endless liability, such that the first wrongdoer in a highway accident will forever be liable to all other drivers that follow. This is plainly a result that proximate cause analyses are designed to avoid.

*Blood*, 668 F.3d at 549 (emphasis added).

## II.    THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

In order to be removable, there must be at least $75,000 in controversy, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). The Eleventh Circuit provided a step-by-step analysis of the evaluation of the proof of the amount in controversy to establish jurisdiction in Federal District Courts. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010). In *Pretka*, the Court first noted that the amount in controversy requirement of removal was "created by Congress to protect defendants." *Pretka*, at 766 (citation omitted). "Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *Id.* The Eleventh Circuit began its analysis by noting that in a case "where the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Pretka* at 752 (citations omitted). The Court held that when a court is presented with evidence that speaks to the potential amount in controversy, it should consider that evidence in the logical context of the plaintiff's claims, and not in a procedural vacuum. Applying reasonable deductions, reasonable inferences or other reasonable extrapolations to jurisdictional evidence "is not akin to conjecture, speculation or stargazing." *Pretka*

at 754. In fact, Courts are free to consider a wide variety of evidence when addressing whether the amount in controversy satisfies the jurisdictional threshold:

> Beyond the complaint itself, other documentation can provide the basis for determining the amount in controversy – either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward. This roughly parallels a plaintiff's right, under Fed.R.Civ.P. 10(c), to make 'a copy of a written instrument that is an exhibit to a pleading... a part of the pleading for all purposes.' No court of appeals decision... holds that a defendant may not submit its own evidence in order to satisfy the jurisdictional requirements of removal, and we conclude that the defendant can.

*Pretka* at 756. Indeed, the courts are free to consider any "summary-judgment-type evidence" as well. *Id.*

Here, the Plaintiff's Complaint alleged that as a result of a motor vehicle accident, the Plaintiffs suffered or will suffer physical injury, pain and suffering, mental anguish, medical expenses and permanent injury. The Plaintiff's Complaint seeks compensatory and punitive damages together with interests and costs. The amount in controversy was unclear from the Complaint.

It is certainly more likely than not that the Plaintiff's claim for punitive damages, medical expenses, and his claim of past and future pain, suffering and emotional distress will exceed $75,000.00. Based upon the nature of the Plaintiff's alleged injuries, the damages claimed in the Plaintiff's Complaint, and Alabama law governing punitive damages, damages for mental anguish and physical pain and suffering, the amount in controversy in this matter clearly exceeds the $75,000.00

threshold required for jurisdiction in this Court. *See Tapscott v. MSDealers Service Corporation*, 77 F.3d 1353, 1356 (11th Cir. 1996).[1]

## CONCLUSION

Removal is proper based on fraudulent joinder because the Plaintiff cannot possibly recover on its claims against Castillo and the where the claim against Castillo have no real connection to the claim against McLane and Lattimore. It is undisputed that no injury accrued to Robinson from the first accident (i.e., he was not present at the time of the first accident or physically impacted by any vehicle or debris from the first accident), and the evidence establishes that over an hour elapsed between the first accident and the Robinson/Lattimore accident, and the two accidents were separated by a distance of over 16 miles. Plaintiff therefore, as a matter of law, cannot demonstrate a reasonable possibility of stating a claim against any participant in the first accident. Castillo, therefore, has been fraudulently joined and is due to be dismissed from these proceedings.

WHEREFORE, premises considered, McLane Foodservice Distribution, Inc. prays this cause, now pending in the Circuit Court of Pike County, Alabama, be removed to the United States District Court for the Middle District of Alabama.

---

[1] The Defendants do not admit that they are liable to the Plaintiff or that the Plaintiff's damages exceed $75,000.00, exclusive of interest and costs. Rather, the preponderance of the evidence shows that the amount in controversy more likely than not exceeds the jurisdictional amount.

/s/ Pamela S. Hallford
PAMELA S. HALLFORD
ASB-0481-M45S
Attorney for Defendant,
McLane Foodservice Distribution, Inc.

**OF COUNSEL:**
**CARR ALLISON**
200 Grove Park Lane
Suite 210
Dothan, Alabama 36305
Telephone: (334) 712-6459
Facsimile: (334) 712-0902
Email: pshallford@carrallison.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May 2019, I have served a copy of the above and foregoing on counsel for all parties by:

\_\_\_\_\_Facsimile transmission;

\_\_\_\_\_Hand Delivery;

XXX Placing a copy of same in the United States Mail, properly addressed and first class postage prepaid to; and/or

\_\_\_\_\_Using the Alafile or CM/ECF system which will send notifications of such to the following:

David M. Cowan
Wyatt P. Montgomery
Law Offices of David M. Cowan, LLC
2020 Canyon Road, Suite 150
Vestavia Hills, AL 35216
Telephone: (205) 460-1212
Email: david@dmcowanlaw.com
Email: wyatt@dmcowanlaw.com
Attorneys for Plaintiff

Steven P. Savarese, Jr.
Holtsford, Gilliland, Higgins, Hitson
& Howard, P.C.
29000 U.S. Highway 98, Suite B-101
Daphne, AL 36526
Telephone: (251) 447-0234
Email:      ssavarese@hglawpc.com
Attorney for Defendant, Roberto M. Castillo

/s/ Pamela S. Hallford
Of Counsel

_Pamela Hallford_ (signature)

PAMELA S. HALLFORD
ASB-0481-M45S
Attorney for Defendant,
McLane Foodservice Distribution, Inc.

**OF COUNSEL:**
**CARR ALLISON**
200 Grove Park Lane
Suite 210
Dothan, Alabama 36305
Telephone: (334) 712-6459
Facsimile: (334) 712-0902
Email:     pshallford@carrallison.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May 2019, I have served a copy of the above and foregoing on counsel for all parties by:

\_\_\_\_\_Facsimile transmission;

\_\_\_\_\_Hand Delivery;

<u>XXX</u> Placing a copy of same in the United States Mail, properly addressed and first class postage prepaid to; and/or

\_\_\_\_\_Using the Alafile or CM/ECF system which will send notifications of such to the following:

David M. Cowan
Wyatt P. Montgomery
Law Offices of David M. Cowan, LLC
2020 Canyon Road, Suite 150
Vestavia Hills, AL 35216
Telephone: (205) 460-1212
Email: david@dmcowanlaw.com
Email:    wyatt@dmcowanlaw.com
Attorneys for Plaintiff

Steven P. Savarese, Jr.
Holtsford, Gilliland, Higgins, Hitson
& Howard, P.C.
29000 U.S. Highway 98, Suite B-101
Daphne, AL  36526
Telephone: (251) 447-0234
Email:      ssavarese@hglawpc.com
Attorney for Defendant, Roberto M. Castillo

Of Counsel